**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:20-CV-00034-KDB-DSC**

|  |  |
|---|---|
| **NORTH CAROLINA BAPTIST HOSPITALS, INC. AND WAKE FOREST UNIVERSITY HEALTH SCIENCES,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**WAYNE HOWARD DULA AND HOPE M. DULA,**<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on the Motion to Remand to State Court by Plaintiffs North Carolina Baptist Hospitals, Inc. and Wake Forest University Health Sciences (the "Providers") (ECF Doc. No. 8) and the Memorandum and Recommendation of the Honorable Magistrate Judge David S. Cayer ("M&R") entered June 11, 2020 (ECF Doc. No. 17). Based on its de novo review of the M&R and careful consideration of Defendants Wayne Dula and Hope Dula's (together "the Dulas") Objection to the M&R (ECF Doc. No. 18), Plaintiffs' Reply to Defendants' Objection (ECF Doc. No. 19) and an examination of the full record of these proceedings, the Court concludes that the recommendation to grant the Plaintiffs' Motion to Remand is correct and in accordance with law. For the reasons and to the extent stated below, the findings and conclusions of the Magistrate Judge will be **ADOPTED** and the Plaintiffs' Motion to Remand will be **GRANTED**.

1

# I.     STANDARD OF REVIEW

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to remand. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[1] 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

---

[1] The parties disagree about the district court's appropriate standard of review for a M&R concerning a motion to remand. *See* ECF Doc. No. 18, 19. The Providers argue that the Court should only decline to adopt the M&R if it is "clearly erroneous." In support of their argument, they rely on Fed. R. Civ. P. 72(a), which provides that the district court must use a clearly erroneous standard of review for written orders on pretrial matters that are not dispositive of a party's claim or defense. *See Lomick v. LNS Turbo, Inc.,* No. 3:08-CV-00296, 2008 WL 5084201, at *1 (W.D.N.C. 2008) (holding that "a motion to remand is nondispositive because it does not resolve the dispute and is solely concerned with which court will hear the claims and defenses."). However, other courts in this district have applied a de novo standard of review to an M&R on a motion to remand. *See Hensley v. Irene Wortham Ctr., Inc.,* Civil No. 1:07CV403, at *1 (W.D.N.C. 2008); *Cargo Logistics Serv., Corp., v. XTRA Lease, LLC,* No. 3:12-sv-832-RJC-DSC, at *1 (W.D.N.C. 2013). The Fourth Circuit has not yet clarified the application of Rule 72 in these circumstances, but because the Court finds that the M&R should be affirmed after de novo review it need not decide if the M&R must be considered only under the more lenient "clearly erroneous" standard.

Federal district courts are courts of limited jurisdiction but possess, *inter alia*, original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," or what is commonly referred to as federal question jurisdiction. 28 U.S.C. § 1331 (2018). A federal district court may exercise subject matter jurisdiction over a civil action filed in state court and subsequently removed by a defendant, but only if the federal district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a) (2018); *Sonoco Prod. Co. v. Physicians Health Plan, Inc*., 338 F.3d 366, 370 (4th Cir. 2003). And, if a court finds itself without subject matter jurisdiction at any time before final judgment, the federal removal statute requires a district court to remand the removed case to state court. 28 U.S.C. § 1447(c) (2018). Also, federal courts "narrowly interpret removal jurisdiction" in deference to federalism, *Sonoco*, 338 F.3d at 370, and the burden of demonstrating removability rests on the removing party, *Prince v. Sears Holding Corp*., 848 F.3d 173, 176 (4th Cir. 2017). Indeed, consistent with this deferential view in support of state jurisdiction, federal district courts resolve any doubts in favor of remand. *Elliott v. Am. States Ins. Co*., 883 F.3d 384, 390 (4th Cir. 2018).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

At all times referred to in the Complaint, Defendant Wayne Dula ("Mr. Dula") was an employee of J.P. Steakhouse LLC and a participant in a group health plan sponsored by his employer known as the J.P. Steakhouse LLC Health Care Plan ("the Plan"). ECF Doc. No. 1 at ¶ 10. The Plan is an employee welfare benefit plan as defined in ERISA[2] § 3(1) and an employee benefit plan as defined in ERISA § 3(3). *Id.* at ¶ 20(b). The Plan is subject to ERISA's substantive

---

[2] "ERISA" refers to the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

and procedural terms pursuant to ERISA § 4(a)(1) and does not fall within any exception to coverage by ERISA set forth in § 4(b)-(c).[3] *Id.*

The parties agree that Mr. Dula received out-patient medical care beginning on or about November 12, 2017 from physicians affiliated with Plaintiff Wake Forest University Health Sciences ("WF Sciences"). ECF Doc. No. 1 at ¶ 11; *see also* ECF Doc. No. 1-1 at ¶ 7-13. The record suggests that the last date of the Patient's intermittent, out-patient treatment was April 24, 2018. ECF Doc. No. 1-1 at ¶ 18. The physicians treated Mr. Dula at facilities owned by Plaintiff North Carolina Baptist Hospital ("the Hospital") using the Hospital's equipment, medications, and supplies. *Id.* at ¶ 11. Mr. Dula alleges that he was asked for information about his health insurance and then presented the Plaintiffs' employees with his health insurance membership card before any physicians treated him. ECF Doc. No. 1 at ¶ 12. To the best of Mr. Dula's recollection, at least one of the Plaintiffs' employees made and retained a photocopy of the membership card before returning it to him. *Id.* He also recalls that he was asked for insurance information and presented his membership card to the Plaintiffs' employees before at least some of his follow-up office visits or treatments. *Id.* Further, Mr. Dula alleges that he was required to execute various forms provided by Plaintiffs' employees before receiving treatment, and he believes that one of these forms was an assignment of his rights to reimbursement from the Plan for medical services to one or more of the Plaintiffs. *Id.* at ¶ 15. Mr. Dula attached a copy of his hospital statements to his Notice of

---

[3] The Plaintiffs do not mention that Mr. Dula is a participant in an ERISA-regulated health insurance plan in their Complaint. *See* ECF Doc. No. 1-1. The Plaintiffs engage with the Dulas' arguments about ERISA for the first time in their Memorandum in Support of their Motion to Remand. *See* ECF Doc. No. 8; ECF Doc. No. 9. Although the Plaintiffs challenge the Dulas' claims about federal question subject matter jurisdiction, they do not dispute that the Plan is governed by ERISA. *Id.*

4

Removal, and each statement specifies that his insurance benefits were assigned to Wake Forest Baptist Health. *See* ECF Doc. No. 1-5.

WF Sciences and the Hospital allege that Mr. Dula has multiple outstanding balances – after deduction for the payments they received from his insurance plan – for the medical treatment that he received. *See* ECF Doc. No. 1-1 at 7-12, 15-21 (stating the alleged remaining balances on the Patient's accounts for his past medical treatment); *see also* ECF Doc. No. 1-5 (showing itemizations of charges for the Patient's treatment, including amounts paid for by the Plan). The total amount of Mr. Dula's alleged outstanding balance with the Hospital is $30,933.52, and the total alleged outstanding balance with WF Sciences is $7,164.27.

On February 6, 2020, the Providers filed the present action in Wilkes County District Court. *See* ECF Doc. No. 1-1. In addition to its claims against Mr. Dula, the Providers also named his wife, Hope Dula, as a defendant. Although the Providers contend in argument that they sued Ms. Dula based on North Carolina's common law doctrine of necessaries, *see* ECF Doc. No. 19 at 3, the Complaint gives no explanation for including Ms. Dula as a defendant (the only allegations involving her merely allege that she lives in Wilkes County, is neither an infant nor incompetent, and is married to Mr. Dula).

On March 12, 2020, Mr. Dula and his wife filed a Notice of Removal alleging federal question subject matter jurisdiction based on ERISA. ECF Doc. No. 1 at ¶ 6-9. The Providers filed this Motion to Remand for lack of subject matter jurisdiction on April 7, 2020. *See* ECF Doc. No. 8. On May 28, 2020, the Honorable Magistrate Judge David S. Cayer filed his M&R, recommending that the Providers' Motion to Remand be granted. ECF Doc. No. 17 at 1. Defendants timely filed an Objection to the M&R on June 11, 2020. ECF Doc. No. 18. The

Providers filed a Reply to the Defendants' Objections on June 25, 2020. ECF Doc. No. 19. The matter is now ripe for the Court's review.

## III.    DISCUSSION

The Providers Motion to Remand for lack of subject matter jurisdiction argues that their claims arise purely out of state law, namely the "implied promise" on the part of a patient to compensate healthcare providers for medical treatment and the common law doctrine of necessaries. ECF Doc. No. 9 at 9; ECF Doc. 19 at 3. In response, the Dulas present two arguments in favor of removal under federal question jurisdiction via ERISA. *See* ECF Doc. No. 1. First, the Dulas argue that the Providers' claims are completely preempted by ERISA, so even if the Providers have asserted state law claims, they are superseded by ERISA and must be adjudicated in federal court. ECF Doc. No. 1 at ¶ 21-37. Second, the Dulas argue that a court will have to interpret and apply the Plan's terms because the crux of the Providers' claim is that they have a right to additional payment beyond what the Plan and Mr. Dula have already paid. *Id.* at ¶ 38-47. The Dulas state that interpreting and applying an ERISA-regulated health insurance plan's terms "is a matter of federal law," so the Providers have necessarily asserted a claim that "depends on federal law, and therefore this Court has federal question jurisdiction over this case." *Id.* at ¶ 46-47.

The Magistrate Judge did not find either of Mr. Dula's arguments persuasive. *See* ECF Doc. No. 17. This Court agrees with the Magistrate Judge's determination that the Providers' claims do not satisfy the requirements for complete preemption as articulated by the Fourth Circuit in *Sonoco Prod. Co. v. Physicians Health Plan, Inc.,* 338 F.3d 336, 372 (4th Cir. 2003) (applying a three-part test to determine whether a plaintiff has satisfied the requirements for complete preemption under ERISA § 502(a)), *See* ECF Doc. No. 17 at 3-5. This Court also agrees with the

Magistrate Judge's conclusion that the Providers' claims do not create any other bases for federal question jurisdiction. ECF Doc. No. 17 at 6.

However, in addition to examining the Magistrate Judge's analysis of federal question jurisdiction in the M&R, this Court also is required to assess whether these proceedings belong to the narrow category of cases that present state-law causes of action but still establish federal question jurisdiction because resolving the plaintiff's claims would require a court to decide a "substantial question of federal law." *Burrell v. Bayer Corp.,* 918 F.3d 372, 380 (4th Cir. 2019) (internal citation omitted). In doing so, this Court applies the four-part test developed by the Supreme Court in *Grable & Son Metal Prod., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313-14 (2005) and *Gunn v. Minton,* 568 U.S. 251, 258 (2013) to determine whether this type of "arising under" jurisdiction lies in this case. As discussed in more detail below, the Court finds that the Providers' claims do not satisfy the requirements of this test, so this Court concludes there is no basis for subject matter jurisdiction.

### A. Complete Preemption

Ordinarily, under the well-pleaded complaint rule, "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2004) (quoting *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Tr. S. Cal.,* 462 U.S. 1, 10 (1983)). When plaintiffs fail to state the federal statute or constitutional provision that gives rise to their claims, federal courts can dismiss for lack of subject matter jurisdiction. *Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d

985, 988 (4th Cir. 1990). However, the "complete preemption" doctrine is an exception to the general well-pleaded complaint rule.[4]

Complete preemption occurs when "a federal statute wholly displaces the state-law cause of action," so "a claim which comes within the scope of [a state-law] cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health,* 542 U.S. at 207-08 (quoting *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8 (2003)) (internal quotation marks omitted). The Supreme Court has only found complete preemption in three statutes: the National Bank Act, the Labor Management Relations Act § 301, and ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) ("ERISA § 502(a)"). *Lontz v. Tharp,* 413 F.3d 435, 441 (4th Cir. 2005) (citing *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 10-11 (2003) (National Bank Act); *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 560 (1968) (Labor Management Relations Act § 301); *Metro. Life. Ins. Co. v. Taylor,* 481 U.S. 58, 66-67 (1987) (ERISA § 502(a)).

In the context of ERISA, only state-law causes of action that fall within the scope of ERISA § 502(a) are completely preempted. *Sonoco Prod. Co.,* 338 F.3d 366 at 371. ERISA § 502(a) "specifies the types of claims that may properly be pursued under ERISA, as well as the parties

---

[4] Complete preemption is a jurisdictional issue, whereas *conflict preemption* is a defense to a cause of action. *Sonoco Prod. Co.,* 338 F.3d at 371. Conflict preemption occurs "where compliance with both state and federal law is impossible," or "where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.,* 575 U.S. 373, 377 (2015) (internal citation and quotation marks omitted). Since conflict preemption is a defense, it usually is not found on the face of a well-pleaded complaint, so it is not a basis for removal to federal court. *Sonoco Prod. Co.,* 388 F.3d at 372. ERISA § 514 states the limits of conflict preemption under the statute: "state laws are superseded insofar as they 'relate to' an ERISA plan." *Id.* at 371 (quoting 29 U.S.C. § 114(a)). Under the doctrine of conflict preemption, a plaintiff who sues under a state law that only conflicts with ERISA within the meaning of § 514 does not have a valid basis for removal based on federal question jurisdiction because the state law is not completely preempted. *Sonoco Prod. Co.,* 388 F.3d at 371.

entitled to assert those claims." *Id.* at 372. The Fourth Circuit applies a three-part test to determine if a claim is completely preempted:

1. The plaintiff must have standing under § 502(a) to pursue its claim;
2. Its claim must fall within the scope of an ERISA provision that [it] can enforce via § 502(a); and
3. The claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan.

*Sonoco Prod. Co.,* 338 F.3d at 372 (internal citation and quotation marks omitted).

With regard to the first part of the above test, the only parties who are eligible to bring claims under ERISA § 502(a) are participants, beneficiaries, and fiduciaries of a plan. *See* 29 U.S.C. § 1132(a)(3). For the Providers' claims to be completely preempted, this Court must conclude that all three of the above parts of the test are satisfied. As the party seeking removal, the Dulas have the burden of showing that federal subject matter jurisdiction exists, so the Dulas must demonstrate that the requirements for complete preemption are met.

This Court agrees with the Magistrate Judge's determination that the Dulas have not shown that the Providers' claims are completely preempted under ERISA § 502(a). As discussed below, the Court adopts the Magistrate Judge's analysis of the standing prong of the complete preemption test, further explaining why the Providers do not have derivative standing. *See* ECF Doc. No. 17 at 3-5. *See also Sonoco Prod. Co.,* 338 F.3d at 372. However, the Court does not adopt the Magistrate Judge's analysis of the final two prongs of the *Sonoco Products* test. *See* ECF Doc. No. 17 at 5. Of course, because the *Sonoco Products* test is conjunctive, the Court still will adopt the Magistrate Judge's overall conclusion that ERISA does not preempt the Providers' claims.

As the Magistrate Judge determined, the Providers do not have standing to sue under ERISA § 502(a). The Dulas argue that the Providers have derivative standing to sue under ERISA § 502(a) because they are Mr. Dula's assignees. ECF Doc. No. 1 at ¶ 28. However, Mr. Dula's

9

Plan specifies that he cannot assign his rights to sue to recover benefits. [5] ECF Doc. No. 1-3 at 14

("No Member shall, at any time,…have any right to assign his or her right to sue to recover benefits

under the Plan, to enforce rights due under the Plan, or to any other causes of action which he or

she may have against the Plan or its fiduciaries"). If Mr. Dula's Plan does not permit him to assign

his rights to sue under ERISA § 502(a), the Providers are unable to establish derivative standing

as assignees. Without derivative standing, the Providers cannot sue under ERISA § 502(a) because

they are not participants, beneficiaries, or fiduciaries within the meaning of the statute's civil

enforcement clause. *See* 29 U.S.C. § 1132(a)(3). In short, the Providers do not satisfy the first

requirement of the Fourth Circuit's test for complete preemption, so their claims are not completely

preempted. *See Sonoco Prod. Co.,* 338 F.3d at 372.

Respectfully, the Court does not adopt the M&R's conclusion that the Providers' claims

do not satisfy the final two requirements of the *Sonoco Products* test. The second prong of the test

states that the "claim must fall within the scope of an ERISA provision that [it] can enforce via §

502(a)." *Sonoco Prod. Co.,* 338 F.3d at 372. The M&R states that because the Providers "seek a

---

[5] While the Fourth Circuit has not addressed the enforceability of anti-assignment provisions in ERISA plans, other courts have concluded that these types of clauses are enforceable. *See Bobby P. Kearney, MD, PLLC v. Blue Cross and Blue Shield of North Carolina,* 376 F.Supp.3d 618, 626-627 (M.D.N.C. 2019) (citing *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield,* 890 F.3d 445, 455 (3d Cir. 2018) (finding that "anti-assignment clauses in ERISA-governed health insurance plans are generally enforceable"); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1296 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.,* 298 F.3d 348, 352 (5th Cir. 2002) (upholding validity of anti-assignment clause); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.,* 156 F.3d 223, 229 (1st Cir. 1998) (same); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.,* 49 F.3d 1460, 1464-65 (10th Cir. 1995) (same); *Davidowitz v. Delta Dental Plan of Cal., Inc.,* 946 F.2d 1476, 1481 (9th Cir. 1991) (concluding that "ERISA welfare [benefits] are not assignable in the face of an express non-assignment clause in the plan")).

10

money judgment against [Mr. Dula and his wife] for a debt arising from unpaid account balances," they do not "seek the recovery of benefits due under the purported Plan or enforcement or clarification of rights under the Plan." ECF Doc. No. 17 at 5; *see also* 29 U.S.C. § 1132(a)(3). However, that conclusion requires the Court to assess the merits of the parties' respective positions – i.e. whether the Providers' claim is simply a claim for a money judgment on unpaid account balances or is instead a recovery of benefits under the terms of the Plan (based on their acceptance of Mr. Dula's insurance, etc.). At this stage, although it appears to be uncontested that the Providers accepted Mr. Dula's insurance prior to providing medical care, sought and received payments from the Plan pursuant to an assignment of benefits, and the Plan clearly states the terms for medical treatments that are covered and to what extent the Plan will reimburse members' medical expenses, *see* ECF Doc. No. 1-3, the Court does not have the subject matter jurisdiction to decide whether the Providers' claims qualify as a recovery of benefits. Therefore, the Court finds that it ought not reach a final determination on whether the Providers are seeking a recovery of benefits due to them under the Plan and thus declines to adopt the M&R finding on that issue.

The third prong of the *Sonoco Products* test states that "the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan." 338 F.3d at 372 (internal citation and quotation marks omitted). As explained more fully below, resolving the Providers' claims will likely require a court to interpret the Plan's terms, because the parties dispute whether the Providers are entitled to further payment beyond what the Plan and Mr. Dula have already supplied. Therefore, the Court declines to adopt the M&R's conclusion that the Providers' claims "do not require interpretation of the Plan" because they "assert straight forward state law claims for unpaid medical services against [Mr. Dula and his wife]." ECF Doc. No. 17 at 5.

Nevertheless, despite the Court's divergence from the M&R's analysis of the final two prongs of the *Sonoco Products* test, the failure of the Dulas to satisfy all of the preemption prongs controls this case's destiny in federal court. Without satisfying the standing requirement under ERISA § 502(a), the Dulas cannot establish that the Providers' claims are completely preempted so federal question subject matter jurisdiction cannot be found on that basis.

**B. "Arising Under" Jurisdiction: the *Grable-Gunn* Analysis**

In addition to complete preemption, another exception to the well-pleaded complaint rule is the artful-pleading doctrine, which states that "a plaintiff cannot frustrate a defendant's right to remove by pleading a case without reference to any federal law when the plaintiff's claim is necessarily federal." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3772.1 (Rev. 4th ed. April 2020 Update); *see also Broadbent v. Allison,* 155 F.Supp.2d 520, 522 (W.D.N.C. 2001) ("However, 'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'") (quoting *Franchise Tax Bd.,* 463 U.S. at 22). One category of artful-pleading cases involves plaintiffs who have only raised state-law causes of action but resolving them would require a court to decide "embedded" federal issues. Wright & Miller, *supra* at 1. This Court will refer to this rare type of federal question jurisdiction as "*Grable-Gunn*" jurisdiction."[6]

---

[6] In their Notice of Removal, the Dulas do not attempt to invoke federal question jurisdiction under the *Grable-Gunn* framework. Nor do the Dulas explicitly allege that the Providers have engaged in artful pleading. However, the Dulas have effectively alleged the same theory, arguing that the Providers have "disguise[ed] their claims." ECF Doc. No. 13 at 13. *See also* ECF Doc. No. 1 at 3 ("Plaintiffs' Complaint tries to avoid or suppress its dependence on ERISA, in part by failing to allege all of the facts showing that Plaintiffs are assignees of Defendants' rights under an ERISA-governed plan."); ECF Doc. No. 19 at 19 ("[T]he Providers couched their claims in terms of a so-called—and…unspecified—'debt collection action.'") (internal citation omitted). Given these allegations, the Court will analyze whether the Providers' claims could establish federal question jurisdiction despite failing the complete preemption test.

12

The Fourth Circuit has applied a four-part test to determine whether a case belongs to the very limited category of cases "in which state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.'" *Burrell v. Bayer Corp.,* 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Franchise Tax Bd.,* 462 U.S. at 28). The test (the "*Grable-Gunn* framework" or "*Grable-Gunn* test") states that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258 (citing *Grable & Son,* 545 U.S. at 313-14); s*ee also Burrell,* 918 F.3d at 379, 380-88 (stating and then applying the requirements of the *Grable-Gunn* framework).

The Court finds that the Providers' claims do not meet all four of the *Grable-Gunn* test's requirements. As discussed below, although this case does necessarily raise a federal issue because the Providers' claims require determining liability with respect to an ERISA plan, the Providers' claims do not present a sufficiently substantial federal question, and if the Court accepts jurisdiction, there is a substantial risk that the doors of the federal courthouse will open to an array of similar cases, disturbing "the federal-state balance approved by Congress" for ERISA cases. *See Gunn,* 568 U.S. at 258. Further, the Providers' claims do not satisfy the "actually disputed" prong of the test.

### 1.    The alleged federal issue is necessarily raised.

In the Fourth Circuit, a federal question is only "necessarily raised" when it is "essential to resolving a state-law claim, meaning that '*every* legal theory supporting the claim requires the resolution of a federal issue." *Burrell v. Bayer Corporation,* 918 F.3d 372, 382 (4th Cir. 2019) (quoting *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir. 2004) (en banc)). If "'even one

13

theory' for each of the [plaintiffs'] claims does *not* require 'interpretation of federal law,' resolution of the federal-law question is not necessary to the disposition of their case." *Burrell,* 918 F.3d at 382 (quoting *Pressl v. Appalachian Power Co.,* 842 F.3d 299, 304 (4th Cir. 2016) (emphasis in original)).

The Fourth Circuit's application of the *Grable-Gunn* framework in *Burrell* led the court to conclude that the parties' dispute did not necessarily raise a federal question. *Burrell v. Bayer Corporation,* 918 F.3d 372, 381 (4th Cir. 2019). *Burrell* involved a defendant-drug manufacturer that attempted to remove the plaintiffs' claims of damages for "violations of North Carolina tort and products liability law" from state court to this Court. *Id.* at 382. The defendants argued that even though the plaintiffs sought relief under state law, "their claims necessarily implicate significant questions regarding [the defendant's] compliance with federal regulations," particularly the 1976 Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act. *Id.* at 376-77. Although *Burrell* does not involve ERISA, the federal statute at issue is similar to ERISA because it also has a conflict preemption provision.[7] *Id.* at 377. The Fourth Circuit found that federal question jurisdiction did not exist in *Burrell* primarily because the defendants could not satisfy the substantiality and congressionally-approved balance prongs of the *Grable-Gunn* test. *Id.* at 381. The Fourth Circuit also determined that the plaintiffs could resolve their claims without showing that the defendant had violated federal law, as their allegations only required the court to consider "purely state-law questions." *Id.*[8]

---

[7] *See supra* note 4.

[8] In its inquiry into whether the plaintiffs' claims in *Burrell* necessarily raised a federal issue, the Fourth Circuit also considered whether the defendant's arguments about the necessity of interpreting federal law demonstrated that these issues were indicative of "stand-alone claim[s]" under federal law rather than alternative theories of liability. 918 F.3d at 384. However, the Fourth Circuit did not resolve this question because the defendant failed to establish federal question

However, in *Townes Telecomm., Inc. v. Nat'l Telecomm. Coop. Ass'n,* 391 F.Supp.3d 585, 590 (E.D.Va. 2019), the court applied the *Grable-Gunn* test to an ERISA case,[9] determining that the parties' dispute did necessarily raise a federal question.[10]  The plaintiffs in *Townes*, several employers who wanted to withdraw from a pension plan governed by ERISA, originally filed their action in Virginia state court and raised what they characterized as state-law claims in their complaint: "whether defendants' planned imposition of withdrawal liability [and] their method of calculating that liability" were unenforceable under Virginia law because they violated ERISA. *Id.* at 587-89. The defendants, a trade association, removed to federal court because they alleged that the suit "arises under federal law by alleging as an essential element of the claims a violation of federal law." *Id.* at 589. Regarding the "necessarily raises" prong of the *Grable-Gunn* test, the court concluded that the plaintiffs necessarily raised a federal issue because they could not succeed on either of their claims without resolving whether the defendants' actions had violated ERISA. *Id.* at 590. Therefore, "every legal theory supporting plaintiffs' claims require[d] the resolution of a federal issue…As such, the federal issue is necessarily raised." *Id.*

---

jurisdiction under the third and fourth prongs of the *Grable-Gunn* test. *Id.* Nevertheless, the court stated that if it had determined that the issues were alternative theories of liability based on federal law, then these issues would not necessarily raise a federal question because they could also be resolved under state-law theories of liability. *Id.* at 383-84.

[9] *Townes* is one of the few cases to apply the *Grable-Gunn* framework to an ERISA case. Many other courts have simply used the complete preemption test to determine whether an ERISA case establishes federal question jurisdiction, failing to follow up with a *Grable-Gunn* analysis if there is not complete preemption.

[10] Following removal, the defendants in *Townes* moved to dismiss all claims for failure to state a claim and to dismiss one claim for lack of standing. *Townes Telecomm., Inc. v. Nat'l Telecomm. Coop. Ass'n,* 438 F.Supp.3d 646, 646-47 (E.D.Va. 2020) ("*Townes* II"). In *Townes* II, the Court granted the defendants' motion to dismiss. *Id.* at 656. The plaintiffs appealed to the Fourth Circuit on March 11, 2020. The appeal in *Townes* II is still pending.

Similar to the plaintiffs in *Townes*, the Providers in this case necessarily raise a federal question in their complaint because their ability to recover will require a court to resolve the meaning of "reasonable" as it is used in Mr. Dula's ERISA plan. On its face, the Providers' complaint does not specify any theories of recovery; the Providers only allege that Mr. Dula and his wife owe them money. *See* ECF Doc. No. 1-1. Nevertheless, the Providers attempt to explain their theories of recovery to this Court in their Reply to Defendants' Objections to the M&R.[11] *See* ECF Doc. No. 19 at 3-4. They say in their briefs that they base their claims on North Carolina law's recognition of an implied-in-law contract[12] between healthcare providers and patients such as Mr. Dula.[13] ECF Doc. No. 19 at 3 (citing *Forsyth Cty. Hosp. Auth., Inc., v. Sales,* 346 S.E.2d

---

[11] For the first time in their Memorandum in Support of Motion to Remand for Lack of Subject Matter Jurisdiction, the Providers argue that their "claims only raise questions relating to basic North Carolina debt collection laws, including contractual and quasi-contractual principles". ECF Doc. No. 9 at 9. They also include a string citation to North Carolina state law cases that address the elements for a breach of contract claim, a quantum meruit claim, and the doctrine of necessaries. *Id.* However, the Providers do not discuss any of these arguments in detail anywhere in their Memo. *See* ECF Doc. No. 9. Also, more significantly, none of these arguments or allegations appear in their Complaint. *See* ECF Doc. No. 1-1.

[12] Unlike express and implied-in-fact contracts, implied-in-law contracts, also called quasi contracts, can be established even if the parties have not manifested their assent to the agreement. *Nationwide Mut. Ins. Co. v. Chantos,* 238 S.E.2d 597, 605 (N.C. 1977). No promise serves as the basis for an implied-in-law contract, so North Carolina law does not view these types of exchanges as contracts. *Booe v. Shadrick,* 369 S.E.2d 554, 556 (N.C. 1988). Instead, the term "implied-in-law contract" is one "of art used to express an equitable remedy used by the court to prevent unjust enrichment." *Waters Edge Builders, LLC, v. Longa,* 715 S.E.2d 193, 196 (N.C. Ct. App. 2011). If an implied-in-law contract exists and a party is left uncompensated, the injured party is entitled to *quantum meruit*, which is "the reasonable value of materials and services rendered by [the injured party] that are accepted and appropriated by [the other party]." *Ellis Jones, Inc. v. Western Waterproofing Co., Inc.,* 312 S.E.2d 215, 218 (N.C. Ct. App. 1984) (internal citation and quotation marks omitted).

[13] The Providers do not explain why the limited allegations in the Complaint demonstrate their chosen state-law causes of action. They state the elements of these causes of action but do not apply these legal elements to the full set of facts. For example, with regard to their claim of an "implied promise" on the part of the Patient to pay for the reasonable value of his treatment, the Providers fail to allege that they have not received compensation equal to the *reasonable value* of the services that they gave the Patient (i.e. failing to distinguish between the "full sticker price" of

16

212, 214 (N.C. Ct. App. 1986)). In the context of healthcare, North Carolina law "implies a promise on the part of [Mr. Dula] who received the benefit of the services to pay what the services are *reasonably worth*, absent an agreement that the services were rendered gratuitously." *See Sales,* 346 S.E.2d at 214 (emphasis added). The Providers refer to this theory of recovery as the "'implied promise' on which [they] seek to collect from the Defendant Wayne Dula." ECF Doc. No. 19 at 3.

The Providers also now purport to rely on the North Carolina common law doctrine of necessaries to assert claims against Mr. Dula's wife.[14] *Id.* The doctrine of necessaries requires that husbands and wives are liable for the necessary expenses that their spouses incur, including medical care. *Forsyth Memorial Hosp., Inc. v. Chisholm,* 467 S.E.2d 88, 89-90. Under North Carolina law,

> In order to make out a prima facie case against a spouse for the recovery of expenses incurred in providing necessary medical services to the other spouse, the following must be shown:
>
> (1) the medical services were provided to the spouse;
> (2) the medical services were necessary for the health and well-being of the receiving spouse;
> (3) the person against whom the action is brought was married to the person to whom the medical services were provided at the time such services were provided; and
> (4) the payment for the necessaries has not been made.

---

their "customary" price list for services and what they more typically accept as "reasonable" from other insurance companies for the same services). *See* ECF Doc. No. 9 at 3-4. Nor does the Complaint address how the acceptance of Mr. Dula's insurance card and an assignment of his insurance benefits affect the nature of any "implied" promise to pay for medical services. The Providers merely allege that they have brought a "state law collection action" and are due the sum of the alleged outstanding balances on the Patient's medical bills. Therefore, the Complaint provides little information about the true nature of the Providers' claims.

[14] The Providers do not explicitly discuss this theory of recovery in their complaint. They first mention the doctrine of necessaries in their Memorandum in Support of Motion to Remand for Lack of Subject Matter Jurisdiction. ECF Doc. No. 9 at 9.

*N.C. Baptist Hosp., Inc. v. Harris,* 354 S.E.2d 471, 474-75 (N.C. 1987).

Both of the Providers' alleged theories of recovery "necessarily raise" ERISA issues. To recover the alleged outstanding sums under either theory, the Providers must show that Mr. Dula has not compensated them for the reasonable value of their services. *Sales,* 346 S.E.2d at 214. More specifically, the Providers must demonstrate that the sums they have already received from Mr. Dula's Plan do not amount to the reasonable value of their services. *See* ECF Doc. 1-6 (showing payment checks from the Plan to the Hospital and WF Sciences).[15]

The Court agrees with the Dulas that the fact finder that renders the final decision in this case must decide whether the Providers are entitled to compensation beyond what Mr. Dula and the Plan have already provided them. ECF Doc. No. 1 at ¶ 44. This determination will turn on the jury's interpretation and application of the term "reasonable," which is defined in Mr. Dula's Summary Plan Description. ECF Doc. No. 1-3 at 62 (defining the term "Reasonable and Allowed" in the Summary Plan Description's section on Defined Terms as "Covered Expenses" subject to various qualifications and limitations). The jury will thus need to consult the Plan, as it "provided the methodology for determining (a) the reasonableness of [the Providers'] charges; (b) the amount payable to [the Providers] by the Plan; and (c) the amount payable to [the Providers] by Mr. Dula." ECF Doc. No. 1 at ¶ 43.

When courts interpret "the benefits provisions of ERISA-regulated insurance plans, [they] are guided by federal substantive law." *Baker v. Provident Life & Acc. Ins. Co.,* 171 F.3d 939, 942 (4th Cir. 1999) (citing *United McGill Corp. v. Stinnet,* 154 F.3d 168, 171 (4th Cir. 1998); *Wickman*

---

[15] The Court notes that the Dulas provided documentation that the alleged remaining balances exceed the Plan's Reasonable and Allowed amount for medical treatment, which "generally limits the maximum amount payable to 150% of the Medicare Allowable." ECF Doc. No. 1-6 at 2, 4-7 (quoting the "Reasonable and Allowable" section of the Explanation of Benefits).

18

*v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir. 1990)); *cf. Ret. Comm. of DAK Ams. LLC v. Brewer,* 867 F.3d 471, 480 (4th Cir. 2017) ("This Court applies the federal common law of contracts to interpret ERISA plans.").[16] Therefore, the Providers' theories of recovery both necessarily raise ERISA issues that will require the forum to interpret and apply federal law, thus satisfying the first prong of the *Grable-Gunn* framework. However, as discussed below, raising a federal issue is not itself sufficient to establish federal question jurisdiction.

## 2. The alleged federal issue is not "substantial."

To establish federal question jurisdiction, it is insufficient that the plaintiff's state-law claim raises an issue of federal law—the federal issue must be "substantial," meaning there is "a 'serious federal interest' in sending the case to a federal forum." *Burrell,* 918 F.3d at 384 (citing *Grable,* 545 U.S. at 313). A substantial federal question is one that is significant to the entire federal system "and not just to the 'particular parties in the immediate suit.'" *Burrell,* 918 F.3d at 385 (quoting *Gunn,* 568 U.S. at 260). The Fourth Circuit has explained that "[a]s a practical matter, a 'substantial' question generally will involve a 'pure issue of law,' rather than being 'fact-bound and situation-specific.'" *Burrell,* 918 F.3d at 385 (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700 (2006)). Also, an interest in maintaining uniformity of results is not sufficiently substantial to permit removal to federal court. *Burrell,* 918 F.3d at 386 (citing

---

[16] The Providers argue that even "if the Plan is consulted during the course of this action, 'a mere need to look at an ERISA plan is not enough to trigger complete ERISA preemption." ECF Doc. No. 9 at 9 (quoting *K.B. by and through Qassis v. Methodist Healthcare-Memphis Hosp.,* 929 F.3d 795, 800, 803 (6th Cir. 2019)). Indeed, the case the Providers cite states that "when the terms of an ERISA plan are only 'relevant in measuring the amount of [p]laintiffs' damages,' ERISA does not preempt the plaintiffs' state law claim." *Id.* at 802 (citing *Gardner v. Heartland Indus. Partners, LP* 715 F.3d 609, 615 (6th Cir. 2013)). However, *K.B.* is an ERISA preemption case— the Sixth Circuit did not consider the application of the *Grable-Gunn* framework to permit the case to proceed in federal court. *See* 929 F.3d at 799. The Sixth Circuit determined that there was not federal question jurisdiction in *K.B.* because it failed the *Davila* test for complete preemption. *Id.* at 800, 803.

*Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 815-16 (1986)). Concerns about uniformity and the risk that state courts may misunderstand federal law are not substantial enough to establish federal question jurisdiction because state courts can resolve federal issues that are connected to state-law causes of action. *Burrell,* 918 F.3d at 386 (citing *Gunn,* 568 U.S. at 263).

The *Townes* court found that the embedded federal question in the case was sufficiently substantial to confer federal question jurisdiction. *See, Townes*, 391 F.Supp.3d at 591. First, the *Townes* court emphasized that Congress intended ERISA "to provide a *uniform regulatory regime* over employee benefit plans." *Id.* (emphasis in original) (quoting *Aetna Health Inc. v. Davila,* 543 U.S. 200, 208 (2004)). Permitting state courts "to decide core ERISA issues risks disrupting the uniformity ERISA was enacted to achieve."[17] *Townes*, 391 F.Supp.3d at 591. And the *Townes* court concluded that the dispute between the parties was "a core ERISA issue" because the implications for conflicting decisions across state courts on withdrawal liability would contradict

---

[17] The *Townes* court's concern about maintaining uniformity of results may contradict the Supreme Court's suggestion in *Merrell Dow* that a potential for dissimilarities in the interpretation of a federal statute is not sufficient to establish federal question jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 815-16 (1986) (*See also Burrell v. Bayer Corporation,* 918 F.3d 372, 385-86 (4th Cir. 2019) ("An alleged 'powerful federal interest' in uniform interpretation of the FDCA, a federal statute, did not change the Court's calculus; a need for uniformity is properly addressed through preemption, not by opening the doors to federal jurisdiction.") (describing the Supreme Court's analysis in *Merrell Dow*). In *Merrell Dow*, the Supreme Court emphasized that the petitioner arguing in favor of federal question jurisdiction "should be arguing, not that federal courts should be able to review and enforce state FDCA-based causes of action as an aspect of federal-question jurisdiction, but that the FDCA pre-empts state-court jurisdiction over the issue in dispute." 478 U.S. at 816. Additionally, the *Merrell Dow* court emphasized that the Supreme Court has the "power to review the decision of a federal issue in a state cause of action," "even if there is not original *district court* jurisdiction." *Id.* (emphasis added). Moreover, the Fourth Circuit has emphasized the Supreme Court's stance on uniformity in *Merrell Dow* as recently as March 2019 in *Burrell v. Bayer Corporation.* 918 F.3d at 386. In rejecting the defendant's argument that a federal court should adjudicate *Burrell* to ensure uniformity, the Fourth Circuit pointed to *Merrell Dow*'s proposition that "even a strong interest in uniformity of results is not enough to make a federal question 'substantial' so that it may be heard in federal court." *Burrell,* 918 F.3d at 386 (citing *Merrell Dow,* 478 U.S. at 815-16).

Congress's attempt to eliminate "inconsistency and uncertainty" in the interpretation of employee benefit plans.[18] *Id.* The *Townes* court also emphasized that ERISA's expansive approach to preemption demonstrated the substantiality of the federal issue. The court stated that "even if plaintiffs' claims are not preempted by ERISA, these claims nonetheless inescapably raise an issue that is important to ERISA."[19] *Id.* at 592.

Further, the *Townes* court reasoned that Congress' grant of complete preemption for some ERISA cases demonstrates "ERISA's importance to the federal system and Congress's desire to resolve ERISA issues in federal court." *Id.* at 593. Additionally, the court pointed to the body of federal common law relating to ERISA to show that judges recognize the importance ERISA has to the federal system. *Id.* at 594. Finally, the court explained that the issue in *Townes* was purely legal and did not necessitate a deep inquiry into the facts of the case, indicating that the parties' question about withdrawal liability would have implications for the entire federal system and not only the parties themselves. *Id.* at 595. In short, the court decided that the case raised a substantial issue because regardless of whether the criteria for complete preemption under ERISA § 502(a) were satisfied, the dispute was "important to the statutory scheme ERISA creates." *Id.* at 594.

---

[18] More specifically, if states are permitted to make their own decisions regarding withdrawal liability in the context of multiple employer ERISA-regulated pension plans, some plans that previously were adequately funded could "suddenly be underfunded by millions of dollars," or on the contrary, "an employer that moves its employees to a more advantageous plan may suddenly learn it owes the former plan millions of dollars," just because the suit was brought in one state and not another. *Townes,* 391 F.Supp.3d at 591.

[19] When the Eastern District of Virginia rendered its opinion in *Townes*, the issue of whether ERISA preempted the plaintiffs' state law claims was not yet ripe for disposition, and the parties disagreed as to whether the claims were preempted. 391 F.Supp.3d at 592 n. 6. However, at footnote 10, the court states that "[i]t is undisputed that complete preemption does not provide jurisdiction here because plaintiffs do not have a cause of action under ERISA." *Id.* at n.10 (citing *Metro Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-67). The court explains that as employers, the plaintiffs do not have standing under ERISA § 502(a)(3)(A), which only permits participants, beneficiaries, and fiduciaries to bring civil suits. *Id.* (citing 29 U.S.C. § 1132(a)(3)).

On the other hand, the *Burrell* court determined that the parties did not present a substantial federal issue for several reasons. First, resolving the parties issues would require "fact-intensive inquiries." 918 F.3d at 385. Second, the plaintiffs neither alleged that the federal statute was unconstitutional nor that the FDA as the regulator had "exceeded its statutory authority or misapplied its own regulations." *Id.* Instead, the plaintiffs sought "monetary relief for [the defendant's] past non-compliance with federal safety standards." *Id.* And, third, the issues raised would not implicate the larger federal regulatory regime or other drug manufacturers. *Id.* In sum, the alleged federal issue in *Burrell* was not sufficiently substantial to confer federal question jurisdiction. *Id.* at 388.

Similarly, in this case, Mr. Dula's alleged federal issue is that the Providers' claims will require a court to interpret and apply the terms of the Plan and doing so is a matter of federal law. ECF Doc. No. 1 at ¶ 46. This argument does not present a sufficiently substantial federal issue to establish federal question jurisdiction under the *Grable-Gunn* framework. Even though the *Townes* court makes several persuasive arguments about the nature of ERISA and its ability to create federal question jurisdiction, the issue in *Townes* was one of pure law. *Townes,* 391 F.Supp.3d at 591. In contrast, this case would require this Court to conduct an inquiry into the facts of the case, specifically how much the Plan has already paid for the Providers' medical services, the true amount of the alleged remaining balance under the Plan, and whether the Providers are entitled to further compensation. Mr. Dula himself has stated that his dispute with the Providers "is not about [his] obligation to pay the [Providers] for the surgical services [he] received, but is instead about the price of those services." ECF Doc. No. 18 at 8. In other words, the parties' dispute is about the price of the specific medical services that were rendered to an individual patient. Resolving the Providers' claims will plainly require the jury that renders the final decision to apply the terms of

22

Mr. Dula's Plan to these facts as previously discussed. However, the forum's inquiry will be situation specific: the forum will be applying *this* Plan's terms to *this* patient's situation. Therefore, this case is more similar to *Burrell*, where federal question jurisdiction did not exist because the parties' dispute was both fact- and situation-specific. *Burrell,* 918 F.3d at 385.

In sum, the federal issue in this case is not sufficiently substantial to justify federal question jurisdiction.[20]

### 3.    The alleged federal issue is not capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

The *Grable-Gunn* framework also requires the party seeking removal to show that removal would not "[upset] the federal-state judicial balance." *Burrell,* 918 F.3d at 387. In *Burrell*, the Fourth Circuit stated that *Grable*'s discussion of an earlier Supreme Court case, *Merrell Dow*, is the controlling interpretation for determining whether Congress intended to redirect state-law cases to federal court. *Id.* In *Grable*, the Supreme Court stated that it did not confer federal question jurisdiction in *Merrell Dow* for two reasons: first, Congress "had not created a private right of

---

[20] The Court recognizes that Congress is considering the broader question of whether it is reasonable for a patient who has used his ERISA-regulated insurance Plan as the basis for his payment for medical services to be individually billed for an alleged remaining balance when there is a dispute about the price for those services. There is an ongoing debate surrounding the practice of "balance billing," which can occur when a patient receives out-of-network care and his health insurance plan will only pay the amount that it deems fair, which then prompts the out-of-network provider to bill the patient for the difference between what the provider wants to charge for the medical services and the amount the health plan covered. *See* WEN S. SHREN, CONG. RESEARCH SERV., LSB10284, BALANCE BILLING: CURRENT LEGAL LANDSCAPE AND PROPOSED FEDERAL SOLUTIONS (2019). The only federal law that addresses balance billing exists in the context of Medicaid and Medicare. *Id.* at 2. There are several proposed federal laws that would limit balance billing, but none of them have been enacted so far. *Id.* at 3-4. State law has also attempted to restrict balance billing. *Id.* at 3. In North Carolina, there are only limited protections against balance billing in the context of emergency health services. *See* MAANASA KONA, STATE BALANCE-BILLING PROTECTIONS, THE COMMONWEALTH FUND (2020).

action" for the alleged violation at issue,[21] and second, Congress had also "not preempted state-law remedies" for such violations.[22] *Id.* (citing *Grable,* 545 U.S. at 318) (describing *Merrell Dow,* 478 U.S. at 812). These two factors were also absent from the statute regulating the medical device at issue in *Burrell*, so the Fourth Circuit concluded that "insist[ing] that those cases must be heard in federal courts if defendants chose to remove them" would undermine the "congressionally-approved regime." *Burrell,* 918 F.3d at 387.

On the other hand, in *Townes*, the Eastern District of Virginia determined that the parties' dispute about withdrawal liability in multiple-employer, ERISA-regulated pension plans could be resolved in federal court without affecting the congressionally-approved balance of state and federal authority in ERISA cases. *Townes,* 391 F.Supp.3d at 595. The *Townes* court emphasized that since the issue had already been deemed "a core ERISA issue" and thus sufficiently substantial to the federal system, the case could proceed in federal court without disrupting the federal-state

---

[21] The Supreme Court's understanding of *Merrell Dow* (as evinced in *Grable*) may be a bit more nuanced than the *Burrell* court describes in its summary. *Burrell,* 918 F.3d 372 at 387. In *Grable*, decided nineteen years after *Merrell Dow*, the Supreme Court clarified that its prior holding in *Merrell Dow* "should be read in its entirety as treating the absence of a federal private right of action as evidence *relevant to, but not dispositive of*, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable,* 545 U.S. at 318 (emphasis added) (construing *Merrell Dow*). The *Grable* court explained that the lack of federal cause of action in *Merrell Dow* was significant for two reasons. First, the absence of a federal cause of action impacted the *Merrell Dow* court's analysis of the case's substantiality. *Grable,* 545 U.S. at 318. Second, the *Merrell Dow* court "saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances." *Id.* More specifically, the *Grable* court explained that the issue in *Merrell Dow* required the "welcome mat" of a federal cause of action because without one, "a horde of original filings and removal cases" would suddenly be able to proceed in federal court. *Id.* The Fourth Circuit's explanation of *Merrell Dow* in *Burrell* does not contradict the Supreme Court's analysis in *Grable*—the Fourth Circuit used the lack of federal cause of action in *Burrell* as "an important clue" to ascertain Congress' intent. *Burrell,* 918 F.3d at 388 (quoting *Grable,* 545 U.S. at 318).

[22] *See supra* note 17 for a broader discussion of the Supreme Court's decision in *Merrell Dow*.

balance. *Id* at 591, 595. In other words, establishing the substantiality prong of the *Grable-Gunn* analysis facilitates satisfying the congressionally-approved balance prong. *Id.* at 595. The *Townes* court also emphasized that permitting the case to proceed in federal court would "not open the federal courthouse to a host of traditionally state court actions" because few cases brought in state court "focus on a contested and purely legal ERISA issue like that presented here." *Id.* The court also relied on the Supreme Court's analysis in *Grable* that "the absence of a federal cause of action is not a bar to federal jurisdiction over a state law claim."[23] *Townes,* 391 F.Supp.3d at 596 (quoting *Grable,* 545 U.S. at 316-20) (describing *Merrell Dow,* 478 U.S. at 804). As employers, the plaintiffs in *Townes* did not have a cause of action under ERISA § 502(a)(3)(A). *Townes,* 391 F.Supp.3d 593, n.10 (citing 29 U.S.C. § 1132(a)(3)). Nonetheless, the *Townes* court stated that the substantiality of the embedded federal issue warranted federal question jurisdiction. *Townes,* 391 F.Supp.3d at 597.

In this case, permitting the Providers' claims to proceed in federal court would open the federal courthouse's doors to a wide range of ERISA-related fact driven contract disputes and disrupt the balance between state and federal courts. Even though the *Townes* court permitted an ERISA case that did not satisfy the complete preemption requirement to proceed in federal court, the issue in that case was more broadly fundamental to ERISA and purely legal. And, the *Townes* court determined that the case's substantiality warranted federal question jurisdiction, so it would not disrupt the congressionally-approved balance between state and federal court. *Townes,* 391 F.Supp.3d at 591, 595. As previously explained, the alleged federal issue in the Providers' case is not substantial within the meaning of the *Grable-Gunn* framework. The issue is also not purely legal—it is situation-specific and fact-bound. Moreover, allowing this case to proceed in federal

_____

[23] *See supra* n. 21 for a discussion of *Grable*'s description of the holding in *Merrell Dow*.

court would likely confer jurisdiction on a host of other cases involving the application of ERISA plans in the context of individual patient / medical provider billing disputes that neither satisfy ERISA § 502(a)'s complete preemption criteria nor raise a purely legal issue related to ERISA. Accordingly, finding jurisdiction in this case would upset the federal / state balance approved by Congress.

**4.      The alleged federal issue is not actually disputed.**

Under the *Grable-Gunn* framework, the federal issue must be "actually disputed" between the parties. *Gunn,* 568 U.S. at 258. In *Gunn*, the Supreme Court explained that this requirement would ensure that the nature of the parties' conflict is "respecting the…effect of [federal] law." *Gunn,* 568 U.S. 251 at 259 (citing *Grable,* 545 U.S. at 313) (alteration in original) (internal quotation marks omitted)). In *Grable*, the Supreme Court concluded that the case raised federal question jurisdiction because the parties "actually disputed" the meaning of the federal statute at issue. *See generally Grable,* 545 U.S. 308 at 314-15. Applying *Grable*, the Supreme Court in *Gunn* concluded that the parties "actually disputed" the meaning of the federal statute at issue because the plaintiff's interpretation of the statute differed from that of the defendant. *Gunn,* 568 U.S. at 259. In *Townes*, the court determined that a legitimate dispute existed between the parties because "a straightforward and accurate description of the dispute plainly reveals" that the plaintiffs and defendants disagreed over whether the defendants' imposition and calculation of withdrawal liability violated ERISA. 391 F.Supp.3d at 590.

Here, even though the Providers' claims must be resolved in the context of an ERISA plan, the Providers' case does not raise a federal issue that is actually disputed because it is not clear that the parties contest any part of the ERISA statutory framework or related federal common law. While the Dulas claim that "any right to payment [the Providers] may have had on the

commencement of this action is created and defined by ERISA," they do not necessarily allege that the Dulas and the Providers disagree about the interpretation or implications of any aspect of ERISA. *See* ECF Doc. No. 1 at ¶ 8, 38-47. Unlike the parties in *Townes* who disagreed over whether provisions of the ERISA-governed document at issue violated ERISA, the Dulas and the Providers in this case do not appear to dispute whether the Plan breaches ERISA itself. Instead, the parties dispute the amount of payment that the Providers are due for their medical services, and they disagree about the extent to which Mr. Dula's Plan governs the amount that he and the Plan are required to pay. In other words, the conflict between the parties revolves around the interpretation and application of language that is specific to Mr. Dula's ERISA Plan, not whether the language violates ERISA.

Accordingly, in summary, the Providers' case does not satisfy the requirements of the *Grable-Gunn* framework. Although the case necessarily raises a federal issue under ERISA, a state court is still the appropriate forum to decide this case. The alleged federal issue in the case is not sufficiently "substantial" in the context of the *Grable-Gunn* test. Moreover, if the case proceeds in federal court, it would likely disrupt the congressionally-approved balance between state and federal judiciaries. Finally, the case does not involve an area of federal law that is actually disputed between the parties. Instead, the parties disagree about the interpretation of terms within a single ERISA-regulated plan.

The M&R and this Court's analysis therefore establish that this Court does not have subject matter jurisdiction over this action. Accordingly, the Court will accept the Magistrate Judge's recommendation that the case be remanded to Wilkes County District Court.

## IV.    CONCLUSION

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion to Remand (ECF Doc. No. 8) is **GRANTED; and**

2. The Clerk is directed to **REMAND** this matter to the District Court of Wilkes County, North Carolina and close this case in accordance with this Order;

   **SO ORDERED ADJUDGED AND DECREED.**


Signed: August 3, 2020

Kenneth D. Bell
United States District Judge